THE STATE v. EXCELSIOR SPRINGS LIGHT, POWER, HEAT & WATER COMPANY, Appellant.

Division Two, May 19, 1908.

1. **INVALID STATUTE: Failure to Define an Offense: Coal Tar in Streams.** Section 28 of the Game and Fish Law of 1905, Laws 1905, p. 163, providing that "it shall be unlawful for any person or persons, firm or corporation to suffer or permit any dyestuff, coal tar, oil, sawdust, poison or deleterious substances to be thrown, run or drained into any waters of this State in quantities sufficient to injure, stupefy or kill fish which may inhabit the same at or below the point where any such substances are discharged or permitted to flow or thrown in such waters," is void, for the reason that it does not intelligently describe or define an offense. It only punishes the person or company that permits those things to be done, and not the person that does them. Nor does it require the persons doing the wrongful act to be in the employ or under the control of the person or firm

permitting the act to be done. Besides, the court cannot supply the essential and necessary provisions which would impress as wrongful and criminal the acts designated in the statute, such as its failure to impose on those committing the acts the duty to prevent the throwing of poisonous substances into the waters of the State, or to declare that they occupy any position that would impose upon them either the moral or legal obligation of not permitting the commission of such acts.

2. ——: ——: Uncertainty. If no judicial certainty can be settled upon as to the meaning of a statute, or if it omits in the defining of a criminal offense certain necessary and essential provisions which go to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiency or undertake to make the statute definite and certain.

Appeal from Clay Circuit Court.—*Hon. J. W. Alexander,* Judge.

REVERSED.

*Harris L. Moore* for appellant.

Section 28 is void for the reason that it does not intelligently describe any offense. The attempt to make it unlawful to suffer or permit certain substances to escape or flow into a creek was evidently intended by the Legislature to prohibit a citizen from placing, putting or draining such substances into the creek or from permitting the same to be done from the premises over which he has control, but the statute does not do either of these. By its terms, a man who threw or placed such substance in the creek would not be guilty, while again one allowing it to be done, though he had no means of preventing it, would be, and the statute being criminal, the defendant has a right to have it strictly construed and to stand on the letter of the law. The provision that it shall be a crime to "suffer or permit" a thing to be done without requiring that it should be under circumstances when defendant had power to prevent its occurrence and without making it wrong to do the act

was plainly an error on the part of the draftsman of the bill. State ex rel. v. Ashbrook, 154 Mo. 375; Bishop on Statutory Crimes (3 Ed.), sec. 41; Warden v. Tye, R. D. 74; 26 Am. and Eng. Ency. Law, 656. The Legislature, in other statutory enactments, has recognized the difference between prohibiting the commission of an act and prohibiting the citizen from permitting the act to be done. The two expressions are not synonymous. R. S. 1899, secs. 2298, 2300, 2305, 7456, 7460, 3009, 3011, 3014, 3015, 3017 and 3018.

*Herbert S. Hadley*, Attorney-General, and *Rush C. Lake*, Assistant Attorney-General, for the State.

(1) Section 28 is not invalid for uncertainty. It is the contention that this provision of the act is unconstitutional, in that it makes it unlawful for a person to suffer or permit the things prohibited to be done, and fails to prescribe a punishment for the doing of the same act by a person. As to the meaning of the word "permit," see State v. Probasco, 62 Iowa 403. A person who actually and flagrantly does place poisons or deleterious substances in the waters of this State, escapes punishment, and the one who suffers or permits it to be done is punished. This argument of counsel is disposed of in the case of State v. Hodges, decided at the October term, 1907, wherein the court discussed the provisions of the law as set out in section 7456, Revised Statutes 1899, and section 29 of the Game Law of 1905. If the act in question had been done, and proven to have been done by a person or persons, the State would have proceeded against him under section 7456, Revised Statutes 1899, but inasmuch as the act complained of was suffered or permitted to be done, the State brought the action against the defendant under the provisions of section 28 of the Game Law of 1905. The Hodges case having been decided so recently, it is not deemed advisable to further discuss the second point upon which defendant relies. (2) There is no question that

there is lodged in the Legislature the authority to enact laws for the preservation of fish and game. State v. Heger, 194 Mo. 707; State v. Weber, 205 Mo. 36.

FOX, P. J.—This cause is here upon appeal by the defendant from a judgment of the circuit court of Clay county, for a violation of the provisions of section 28, of what was commonly called the Game and Fish Law, enacted by the General Assembly of this State in 1905. [Laws 1905, p. 163.] The information based upon the provisions of the section of the statute heretofore referred to and upon which this judgment rests, omitting formal parts, was as follows:

"Ralph Hughes, prosecuting attorney within and for the county of Clay in the State of Missouri, informs the court (upon the affidavit of W. A. Higbee, a deputy game and fish warden of the State of Missouri, herein filed), that the Excelsior Springs Light, Power, Heat and Water Company, a corporation organized and existing according to law, did, on the 23rd day of May, A. D. 1906, at the county of Clay and State of Missouri, by and through its servants and employees, wilfully and unlawfully suffer and permit certain coal tar, coal gas, and other poisonous and deleterious substances to be thrown, run and drained into certain waters of the State of Missouri, to-wit, into a stream or branch commonly known and designated as the Dry Fork of Fishing River, and from thence to run and drain into certain other waters of the State of Missouri, to-wit, into a stream commonly known and designated as the East Fork of Fishing River, in quantities sufficient to injure, stupefy and kill the fish which inhabit said waters, at and below the point where said coal tar, coal gas and other poisonous and deleterious substances were suffered and permitted to be thrown, run and drain into such waters, as aforesaid, against the peace and dignity of the State."

In order to determine the legal propositions in-

volved in this case it may be conceded that there was some evidence tending to show that the refuse from the gas plant which went into the river contained some coal tar, but as to the amount of coal tar in it, or as to whether it was the coal tar or some other substances in the refuse which caused the danger or killed the fish, the evidence is not entirely satisfactory.

The court instructed the jury and the cause was submitted to them and a verdict was returned finding defendant guilty and assessing its punishment at a fine of $200. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. From the judgment which was entered in accordance with the verdict, the defendant prosecuted this appeal and the record is now before us for our consideration.

## OPINION.

The record before us discloses that the offense of which defendant was convicted was a misdemeanor, but it also is made to appear that the appeal was granted to this court for the reason that the validity and constitutionality of the section upon which this prosecution is based was challenged. Numerous errors are assigned as a basis for the reversal of this judgment.

FIRST. Complaint is made that the trial court did not properly declare the law upon the facts developed at the trial.

SECONDLY. It is earnestly insisted that section 28 upon which this prosecution is predicated is void, for the reason that it does not intelligently describe or define an offense.

It is apparent that the second proposition, which involves the validity of this statute, is the vital and overshadowing one in this cause, and if the insistence of learned counsel for appellant is to be maintained, the necessity for discussing other questions presented can be dispensed with, hence we will direct our attention first to the discussion of the second proposition.

## I.

Section 28, Laws 1905, p. 163, upon which this prosecution is based, provides that "it shall be unlawful for any person or persons, firm or corporation to suffer or permit any dyestuff, coal tar, oil, sawdust, poison or deleterious substances to be thrown, run or drained into any of the waters of this State in quantities sufficient to injure, stupefy or kill fish which may inhabit the same at or below the point where any such substances are discharged or permitted to flow or thrown in such waters. Any person or persons, firm or corporation offending against any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than $200 nor more than $500 for each offense."

It will be observed that the provisions of that section undertake to create and define an offense by simply saying that any person or persons, firm or corporation who shall suffer or permit any poisonous or deleterious substances to be thrown, run or drained into the waters of this State in quantities sufficient to injure, stupefy or kill fish, shall be deemed guilty of a misdemeanor. No one can read the provisions of that section and escape the conclusion that it is a marked departure from the usual legislation along that line which undertakes to define criminal offenses. It will be observed that the provisions of this section do not condemn the act of throwing poison or deleterious substances into the waters of this State, but is simply directed against those who suffer or permit such act to be done. In other words, A may throw the poison or deleterious substances into the waters of this State, but his act is not embraced within the provisions of this section. On the other hand, if B suffers or permits A to do this act, he is guilty of a criminal offense. As it is very tersely stated by the learned Attorney-General in his brief now before us, "a person who actually and fla-

grantly does place poison or deleterious substances in the waters of this State escapes punishment, and the one who suffers or permits it to be done is punished.'' Another marked feature of this statute is the omission of necessary provisions which are absolutely essential in order to stamp the acts of persons permitting or suffering substances to be thrown into the waters of this State as a wrongful or criminal act. It nowhere provides that the permission or suffering of the acts to be done must be upon premises or in the operation of a plant under the control of the persons, firm or corporation designated by the statute, or that the persons committing the act are in the employ of such persons, firm or corporation. In other words, there is an entire absence from that section of provisions which in any way impose the duty upon the persons, firm or corporation designated by the statute to prevent the throwing of poisonous substances into the waters of this State or that such persons, firm or corporation as mentioned in the statute occupied any position which would impose upon them either the moral or legal obligation of not suffering the commission of such acts. Manifestly the provisions of this section were intended to be directed towards persons, firms or corporations operating sawmills or other plants along streams of water in this State where poisonous refuse matter from such plants might be thrown, run or drained into such streams of water, but the difficulty in holding that this statute intelligently defines a criminal offense is that the court cannot supply the essential and necessary provisions which would impress the acts committed by those designated in the statute as wrongful or criminal.

The people of this State have long felt the necessity of appropriate legislation for the preservation and protection of game and fish, and this court would not hesitate in giving its unqualified approval to a law which condemned the throwing of dyestuff, coal tar, oil, sawdust, poisons or other deleterious substances into any

of the waters of this State in quantities sufficient to injure, stupefy or kill fish, and which condemned the acts of any person, firm or corporation in throwing, running or draining such poisonous substances into the waters of this State or in permitting or suffering the same to be done in the operation of their plants upon premises under their control or by persons upon such premises in their employ.

Our attention is directed by the Attorney-General to the case of State v. Probasco, 62 Iowa 400, 1. c. 402, where the court indulges in the discussion of the meaning of the word "permit." In treating of this word, it is said: "It implies express assent or license to do an act, or a failure to prohibit or prevent it. If it is the duty of one to prevent or prohibit an act, and he fails to do so, or to use efforts to do so, he permits it. He permits the act which he could have prevented. This is the common meaning of the word, and it is used in that sense in the statute before us." It is sufficient to say of that discussion that it simply emphasizes the correctness of the conclusion reached upon this statute. It is there plainly pointed out that "if it is the duty of one to prevent or prohibit an act, and he fails to do so, or to use efforts to do so, he permits it. He permits the act which he could have prevented."

Recurring to the provisions of section 28 upon which this prosecution rests, it will be noted, as before stated, that there is an entire absence of the necessary and essential provisions which imposes the duty upon those designated in the section to prevent or prohibit the acts therein specified.

Our attention is also directed to the expression of the views of this court upon the provisions of section 7456, Revised Statutes 1899, and section 29 of the Game Law of 1905, in State v. Hodges. While the opinion in that case is on file in this court, yet, after it had been delivered, the court's attention having been called to the fact that the record failed to show any final judg-

ment entered against the defendant, that opinion was withdrawn, and the case was remanded with directions to enter up judgment upon the verdict as returned by the jury. [State v. Hodges, 207 Mo. 517.] Therefore, the case of State v. Hodges, to which our attention has been directed, has not been and will not be officially reported. That case has no application to the proposition involved in the case at bar. While section 7456 and section 29 of the Game Law of 1905 relate to the preservation of game and fish, yet it is only necessary to read the two sections in order to demonstrate that they relate to the commission of entirely different acts, the commission of which constitutes the respective offenses designated by those sections, and have no reference to the acts embraced in section 28 involved in the case at bar.

Recurring again to the provisions of section 28 upon which this proceeding is based, we are not unmindful of the well-settled rule that legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support it. But on the other hand, it is equally well settled that if no judicial certainty can be settled upon as to the meaning of a statute, or if it omits in defining a criminal offense certain necessary and essential provisions which go to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiency or undertake to make the statute definite and certain.

In 26 Am. and Eng. Ency. Law (2 Ed.), 656, the rule as above indicated finds substantial support. In the text it is there said: "When the language of an act appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate, it is simply void; for if no judicial certainty can be settled upon as to its meaning, courts are not at liberty to supply the deficiency or make the stat-

ute certain. But legislation cannot be nullified on the ground of uncertainty, if susceptible of any reasonable construction that will support it.'' Numerous authorities are cited in the notes which doubtless furnish at least substantial support to the announcement of the rule.

Mr. Bishop, in his treatise on Statutory Crimes (3 Ed.), in the 3rd subdivision of section 41, thus states the rule: ''Where the statutory terms are of such uncertain meaning, or so confused, that the courts cannot discern with reasonable certainty what is intended, they will pronounce the enactment void.''

It is apparent that the provisions of section 28 are not susceptible of a proper and intelligible enforcement by the courts of this State, unless by implication we are willing to treat as embraced within the provisions of that section the essential and necessary provisions heretofore pointed out. This we are unwilling to do.

Having reached the conclusion as herein indicated upon the main proposition, there is no necessity for giving any attention to the errors complained of respecting the declarations of law given by the court.

We have indicated our views upon the section of the statute now in judgment before us, which results in the conclusion that the judgment of the trial court should be reversed and the defendant discharged. It is so ordered.

All concur.