## Ex parte D. E. SMITH.

No. A-4643.   Opinion Filed Sept. 22, 1923.

(218 Pac. 708.)

(Syllabus.)

1.  **Intoxicating Liquors—Law Making Violations of Prohibitory Law Felony Held Unconstitutional.** The act approved February 5, 1923, chapter 1 Session Laws 1923, making it a felony to make or possess mash, or wort, or wash fit for distillation, or to make or set up a still or parts thereof used in the process of manufacturing intoxicating liquor, is in conflict with and exceeds the limitations contained in the constitutional ordinance prohibiting the manufacture and sale of intoxicating liquor.

2.  **Same—Existing Law not Repealed by Law Making Violation of Prohibitory Law Felony.** Neither the title nor the text of the act, nor the import of its provisions, indicate that it was the intention of the Legislature to repeal any substantive provisions of our prohibitory liquor law then in force, or to repeal any existing law.

3.  **Same—Violation of Prohibitory Law Misdemeanor Under Constitution.** The penal provisions of our Constitution relating to the illegal sale and manufacture of intoxicating liquor contemplate that the offense shall be a misdemeanor. This constitutional provision is self-executing, and the Legislature is powerless to alter the minimum punishment provided for its violation.

4.  **Same—Law Making Violation of Prohibitory Law a Felony Held Unenforceable.** The act is not susceptible of enforcement as a necessary part of our prohibitory liquor law, in that it attempts to make of a constituent part of the constitutional

and statutory offense of manufacturing liquor a felony, whereas the Constitution and law makes the commission of the whole offense a misdemeanor only.

5. **Evidence—Rule of Presumptive Evidence in Law Making Violation of Prohibitory Liquor Law Felony Held Open to Criticism.** The rule of presumptive evidence as stated in section 6 of the act (Laws 1923, c. 1) is open to criticism, in that it bases a presumption on an inference or another presumption, and that it may be made to apply to facts having no intrinsic evidential value.

Habeas corpus by D. E. Smith for release from custody. Writ allowed.

Mathers & Coakley, Thomas Norman, and John W. Scott, for petitioner.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

E. E. Blake, Harold O. Mulks, Lewis Paullin, and Edward Hirsh, amici curiae.

BESSEY, J. The petitioner, D. E. Smith, in the district court of Stephens county entered a plea of guilty to the charge of having possession of three barrels of mash, in violation of chapter 1, pp. 1 and 2, Session Laws 1923. Upon the plea so entered the court rendered judgment and sentenced the petitioner to serve a term of one year in the state penitentiary and to pay a fine of $100. The petitioner is now in the penitentiary serving this sentence.

This application for a writ of habeas corpus is brought to secure the release of petitioner and his discharge from the custody of the warden of the state penitentiary at McAlester, where he is incarcerated and confined by virtue of a commitment based upon this judgment. The petitioner says that the writ should be granted for the reason that the act upon which his conviction and incarceration are based is illegal,

unconstitutional, and void, and asks that an order be made directing his release from custody.

The act so attacked reads as follows:

"An act relating to stills, distilleries, mash, wort, wash fit for distillation or for the manufacture of beer, wine, distilled spirits or other alcoholic liquor; fixing the penalty for the violation thereof, and declaring an emergency.

"Be it enacted by the people of the state of Oklahoma:
"Intoxicating Liquors—Possession of Ingredients.

"Section 1. No mash, wort or wash fit for distillation or for the manufacture of beer, wine, distilled spirits or other alcoholic liquor shall be made, fermented or possessed by any person, other than a person duly authorized under the laws of the United States and the state of Oklahoma, to manufacture sweet cider, vinegar, nonalcoholic beverages, or spirits for other than beverage purposes.

"Still—Registration.

"Section 2. No person shall keep in his possession any still worm or still, without registering the same with the proper United States officer, and no person shall set up to be used as a distillery, any still worm or substitute therefor, or a still or a substitute therefor, such as a kettle, wash-pot, metal tank or other vessel of any kind for the purpose of using same, or which after being set up may be used for the production of distilled spirits, or any liquor the sale of which is prohibited by the laws of the state of Oklahoma.

"Distillery—Prohibited Within Oklahoma.

"Section 3. No distillery shall be set up in this state for the purpose of manufacturing distilled spirits, or any liquor the sale of which is prohibited by the laws of the state of Oklahoma, for beverage purposes, and no distillery shall be used in the manufacture of such spirits or liquor, and no distillery shall be sold or possessed for the manufacture of such spirits or liquor. Any device or any process

which separates alcoholic spirits from any fermented substance shall be regarded as a distillery.

## "Stills—Manufacture of Prohibited.

"Section 4. No person shall manufacture a still worm, or still without first having qualified under the laws of the United States as a manufacturer of stills, and without paying the tax required by the laws of the United States on the stills and worms manufactured. Any person who converts a kettle, wash-pot, metal can, tank, barrel or other vessel into a still or who converts any metal pipe of any kind into a still worm or condenser for a still, shall be deemed a manufacturer of stills.

## "Collector Internal Revenue—Certificates—Evidence.

"Section 5. The certificate of the proper collector of internal revenue with respect to any particular still or distillery found in this state, shall be accepted in any court of the state as prima facie evidence of the status of such still or distilling apparatus.

## "Possession—Prima Facie Evidence of Ownership.

"Section 6. Any mash, wort, or wash, and any distillery found in any house, or building, or within any inclosure shall prima facie be deemed, in the case of mash, wort or wash, to have been made and fermented by, and in the case of a distillery to have been set up by, and to be the property of the person or persons who are in actual possession and control of the house, building or inclosure as the case may be; provided, further, that it shall be unlawful for any person to place any mash, wort, or wash, or any distillery or still on the premises of another.

## "Felony.

"Section 7. Any person who shall violate any provision of this act shall be guilty of a felony and punished by fine not less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00) and imprisonment in the penitentiary not less than one year nor more than ten years.

"Emergency.

"Section 8. It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect and be in full force from and after its passage and approval."

The reasons urged by petitioner why this act should be declared unconstitutional and void may be summarized thus:

(1) That the penal provisions of our Constitution relating to the illegal sale and manufacture of intoxicating liquor contemplate that the offense shall be a misdemeanor; that this constitutional provision is self-executing and that the Legislature is powerless to change the minimum punishment there prescribed for its violation.

(2) That neither the title nor the text of the act, nor the import of its provisions, indicate that it was the intention of the Legislature to repeal any substantive provisions of our prohibitory laws then in force, or to repeal any other existing law.

(3) That considered in connection with the Constitution and laws then in force, the act is not susceptible of enforcement as a necessary part of our prohibitory liquor law, in that it attempts to make a constituent part of the constitutional and statutory offense a felony, whereas the Constitution and the statutes make the commission of the whole offense a misdemeanor only.

(4) That it attempts to establish a statutory rule of probative evidence of guilt based on facts not inconsistent with innocence, which facts may have and often do have no actual evidential force tending to establish guilt.

(5) That the act, considered in connection with the constitutional and other prohibitory acts, is so inconsistent and

incongruous as to amount to an absurdity, and that it is not susceptible of reasonable enforcement.

The Enabling Act, in which our constitutional prohibitory liquor law had its inception, provided:

"That the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors, * * * is prohibited for a period of twenty-one years from the date of the admission of the state into the Union, and thereafter until the people of said state shall otherwise provide. * * * Any person, individual or corporation who shall manufacture, sell, barter, give away or otherwise furnish any intoxicating liquor * * * shall be punished, on conviction thereof, by a fine not less than fifty dollars and by imprisonment not less than thirty days for each offense. * * * Upon admission of said state into the Union these provisions shall be immediately enforceable in the courts of said state."

The provision above quoted from the Enabling Act was submitted to the people of the state and adopted as a part of its Constitution. It was held in State v. Hooker, 22 Okla. 712, 98 Pac. 964, that this constitutional provision was self-executing, but that it did not impose a limitation or a restriction upon the power of the Legislature to enact additional or supplemental legislation, except that no enactment should contravene the provisions of such ordinance.

In Ex parte Cain, 1 Okla. Cr. 7, 93 Pac. 974, in an opinion written by Chief Justice Williams, it was held that the prohibitory provision in the Constitution was self-executing and that a violation of its provisions was a misdemeanor; that section 13 of the Enabling Act provided that upon the admission of the state the laws in force in the territory of Oklahoma, as far as applicable, should extend over and apply to said state until changed by the Legislature; that section 2 of the Schedule of the Constitution provided that all

laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which were not repugnant to the Constitution and which were not locally inapplicable should be extended to and remain in force in the state of Oklahoma until they expired by their own limitations, or were altered or repealed.

With reference to the punishment of misdemeanors, one of these laws adopted at the advent of statehood provided:

"Except in cases where a different punishment is prescribed by this code or by some existing provisions of law, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding one year or by a fine not exceeding $500.00, or both such fine and imprisonment." Comp. Laws 1909, § 2032.

Construing these provisions together, it seems apparent that the Constitution directly provided for a minimum punishment for a violation of the prohibitory liquor law and indirectly provided a maximum punishment by the adoption of the statute relating to punishment in misdemeanor cases to apply in all cases where no specific punishment was provided.

The language used in section 13 of the Enabling Act, the laws of Oklahoma shall prevail until changed by the Legislature thereof, indicates that the maximum punishment for this or any other offense may be altered, modified, or increased by subsequent legislation. The question here arises whether the minimum punishment may be so altered, modified, or increased. The Constitution provides that the minimum imprisonment shall be for a period not less than 30 days; has the Legislature now the authority to make this minimum period of imprisonment more or less? The Constitution provides that the imprisonment should be in connection with a fine of not less than $50; can the Legisla-

ture now provide for the imposing of a greater or less minimum fine, or abrogate the one or the other? In other words, is there an express or necessarily implied limitation against pushing the minimum penalty named in the Constitution forward, or must it remain where the Constitution placed it?

The fact that a provision in a Constitution is self-executing does not necessarily preclude the Legislature from legislating on the same subject. Such provision may be supplemented by appropriate laws designed to make it more effective, within the bounds reserved by the Constitution and not exceeding the limitations specified. 2 Corpus Juris, 731; 6 R. C. L. 61; Stevens v. Benson, 50 Or. 269, 91 Pac. 578; Reeves v. Anderson, 13 Wash. 17, 42 Pac. 625; Beecher v. Baldy, 7 Mich. 488; Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626; People v. Draper, 15 N. Y. 532; Cooley's Const. Lim. (7th Ed.) 122.

Usually, if a constitutional provision supplies the rule for its enforcement and fixes a penalty for its violation, it is not only self-executing, but also limits the power of the Legislature to change the penalty. 12 C. J. "Constitutional Law," § 109; Louisville, etc., Ry. Co. v. Com., 105 Ky. 179, 48 S. W. 416, 43 L. R. A. 550; State ex rel. Bennett v. State Board of Examiners, 40 Mont. 59, 104 Pac. 1055; 8 Cyc. 753; Commonwealth v. Jones, 10 Bush (Ky.) 735.

A self-executing constitutional provision is a higher form of statutory law, designed to prevent the Legislature from making it nugatory or modifying its essential features. Kitchin v. Wood, 154 N. C. 565, 70 S. E. 995; Lyons' v. Longmont, 54 Colo. 112, 129 Pac. 198.

The Constitution of Kentucky provides that for willfully and knowingly violating a statute prohibiting discrimination in freight rates by a railway or transportation company such

company should be fined $2,000 for the first offense, $5,000 for the second offense, and for the third offense should suffer a forfeiture of its charter and franchise. The Constitution also contained a proviso that the transportation company in special cases, on investigation and order of the State (Railway) Commission, might be relieved from its operation. Subsequently a statute was enacted prohibiting freight rate discrimination in language similar to that used in the Constitution, except that the doing of the things prohibited, whether purposely or not, constituted the offense, whereas the Constitution made it an offense to willfully and knowingly do the acts prohibited. The statute also contained directions as to methods and procedure before the Commission to determine how and in what manner transportation companies should be exempt from its operation, and prescribed a less penalty than that named in the Constitution. The indictment in the case of Louisville, etc., Ry. Co. v. Commonwealth, supra, was framed to follow the statute and made no mention of the proviso in the Constitution. The indictment was attacked as not being in compliance with the Constitution, for reasons relating to long and short hauls and individual discriminations in the aggregate, but was not attacked on the specific ground that the statute prescribed a different penalty than that prescribed by the Constitution, so that that feature was not directly before the court for consideration. There were two dissenting opinions in the case, in one of which this statement was made:

"The penalty for the offense, as prescribed (by state) is a fine, for the first offense, of not less than $500 nor more than $1,000; for the second offense, not less than $500 nor more than $2,000; and for the third offense, not less than $2,000 nor more than $5,000. * * *

"The penalty (under the Constitution) shall be, for the first offense, a fine of $2,000; for the second offense, a fine

of $5,000; and, for the third offense, a forfeiture, ipso facto, of franchise privileges and charter rights. * * * It is therefore manifest that, so far as (the statutes) conflict with (the Constitution) they are void.''

So far as we know, a self-executing Constitutional provision specifically prohibiting and fixing the penalty for the illegal sale or manufacture of intoxicating liquor has never been incorporated in any state Constitution excepting only those of Oklahoma and Arizona. The constitutional prohibitory provisions in Maine, Rhode Island, Kansas, Idaho, and Colorado briefly state that the sale and manufacture of liquor shall be prohibited, leaving the whole question with the Legislature to enforce and vitalize by appropriate legislation. It is clear that in these states the Legislature may establish and change both the maximum and minimum penalties at will.

The Constitution of Arizona (Amendment 23) provides that—

''Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind * * * or who manufactures, or introduces into the state any such liquor'' shall be guilty of a misdemeanor, and upon conviction shall be ''imprisoned for not less than ten days nor more than two years, and fined not less than $25.00 and costs, nor more than $300 and costs for each offense.''

Section 2 thereof provides:

''The Legislature shall by appropriate legislation provide for the carrying into effect of this amendment.''

Section 3:

''This amendment shall take effect on and be in force on and after the 1st day of January, 1915.''

In Gherna v. State, 16 Ariz. 344, 146 Pac. 494, Ann. Cas.

1916D, 94, the court held that these provisions of the Constitution were self-executing; that it was a self-operating legislative measure, prohibiting the things mentioned and prescribing a punishment for its violation; a self-executing, positive penal law, capable of enforcement without supporting legislation. The court said that in order to make the enforcement of its provisions more certain and effective the Legislature was empowered to supplement the law with such safe-guards as to them seemed appropriate, and by implication held that the penalty provided could not be altered by the Legislature. Upon this point the court said:

"This prohibition amendment is an act of the sovereignty. The Legislature, therefore, cannot take from it or add to it, but it may pass suitable, fit or proper laws as an aid to the authorities whose duty it is to enforce the constitutional provision. The experience of those states that have tried to suppress the liquor traffic has been that many subterfuges are resorted to to defeat the object aimed at. This fact was doubtless well known to the electorate, and in anticipation of like tactics being practiced in this state, and out of abundant caution, they requested, * * * that the Legislature pass appropriate legislation, for instance, such as declaring places where liquor is sold nuisances, making possession of liquor prima facie evidence of guilt, providing for the search of blind tigers, and rules requiring transportation companies to keep records of liquor shipped into the state, etc.," citing with approval Nowakowski v. State, 6 Okla. Cr. 123, 116 Pac. 351.

If this limitation holds where both the minimum and maximum punishments are fixed by the Constitution, we see no reason why, in principle, it would not apply where only the minimum is fixed, as in the Oklahoma Constitution. It has been argued that it was placed there to make the law self-executing until such time as the Legislature might change it, but the Constitution contains no declaration and, as we

think, no implication, that the minimum punishment should stand as fixed "until otherwise provided by law," as appears in some of the other provisions of the Constitution. The same reasoning was outlined by this court in the Nowakowski Case, supra, thus:

"In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified."

As an aid in determining the intent of the delegates who framed this prohibitory enactment, it is not improper to consider that its adoption as applied to the Indian Territory part of the state was made at the behest of Congress, as a condition precedent to the admission of the state into the Union. To make an offense a felony will, in many instances, have a more deterrent effect on possible violators of the law than to make it a misdemeanor, provided that public sentiment will aid and support its enforcement. But if the people, courts, and juries are loath or unwilling to enforce it, or will enforce it only in its graver aspects, an unusually severe penalty will sometimes defeat its very object.

The chief evil which constitutional prohibition sought to reach was the open saloon, which had degenerated into a kind of clearing house for thieves, robbers, prostitution, and political corruption, and which had a general debauching influence on society. On the other hand, subsequent events have demonstrated that a large class of citizens, possibly a majority, voted for this measure with the expectation that it

would be enforced sufficiently to abate those evils but not to the extent of depriving them of the moderate use of liquor in the home or in private social intercourse. A recent report made by the Attorney General to the President indicates that the same sentiment prevails nationally. These were prohibitionists with reservations, but without their support these measures might not have been adopted. From the dawn of history until recently a regulated use and sale of liquor has prevailed more or less everywhere. The efforts made by the federal government to enforce prohibition since the adoption of the Eighteenth Amendment have demonstrated that the habits and taste of man cannot be quickly changed by law. Anticipating these conditions, Congress and the framers of the state Constitutions expressly provided in the constitutional ordinance, as we construe it, an unalterable minimum punishment for its violation. The maximum penalty to be prescribed was left open, to be decreased or increased at the will of the Legislature, as the public sentiment and the exigencies of the situation might demand. If this specific penal provision in no way limited the power of the Legislature, why did Congress direct that it be incorporated in the measure? We would not be justified in holding that it means nothing. The only other construction it could be given would be that the provision was to be self-operating until the Legislature should meet and act upon it; to our mind that would be a strained construction, not contemplated by the authors.

It must be conceded that the Legislature may act at will upon any legitimate subject not limited by the Constitution. Without the constitutional provision the Legislature could have enacted any reasonable kind of penal law to suppress the manufacture and sale of intoxicating liquor. In this connection it has been urged that the prohibiting of the making

of mash and the erecting of a still is general legislation and that it is within the powers of the Legislature to suppress such acts, independent of our constitutional prohibitory provisions. Clearly such a claim is illogical. The statute here attacked was passed in aid of and auxiliary to the enforcement of our self-executing constitutional prohibition measure. It would have amounted to an absurdity to pass such an act in a case where the Constitution and laws permitted the sale and manufacture of liquor. This act was designed to be a supplemental measure in aid of the enforcement of the prohibitory laws then existing. From a legal standpoint, the prohibiting of the making of mash or the setting up of a still would be useless if there was no law against the manufacture or sale of liquor. The manifest purpose of this act was to make it an integral part of all the acts dealing with that subject.

Holding, as we do, that the statute here attacked was designed to be and must be construed to be a part of our other prohibitory laws and supplementary thereto, with no intent to repeal any existing law, an incongruity appears, in that a violation of the complete act, i. e., the manufacture of intoxicating liquor, is a misdemeanor, while a constituent portion of the offense, i. e., the steps taken towards such manufacture, is a felony. It is self-evident that a part cannot be greater than the whole. For instance, the offense of assault and battery is by statute made a misdemeanor; could the Legislature, without repealing that statute, make a simple assault a felony, the latter being a necessary, constituent part of the former? If this could be done, how could each law be enforced? Where a statute does not operate as a repeal of some other existing statute and is so conflicting and inconsistent with the law it seeks to vitalize, and the provisions of the supplemental act are so indefinite, that the two

cannot be harmonized, the court should declare the supplemental act inoperative. People v. Sweitzer, 266 Ill. 459, 107 N. E. 902, Ann. Cas. 1916B, 586; State v. Excelsior Springs Light Co., 212 Mo. 101, 110 S. W. 1079, 126 Am. St. Rep. 563; State ex rel. Hustings v. Bd. of State Convassers, 159 Wis. 216, 150 N. W. 542, Ann. Cas. 1916D, 159.

Furthermore, the penalty sought to be imposed by this supplementary act is in conflict with the general statutes. Section 2296, Comp. Stat. 1921, provides:

"No person can be convicted of an attempt to commit a crime when it appears that the crime intended or attempted was perpetrated by such person in pursuance of such attempt."

And the section following, section 2297, provides that an attempt to commit a crime by doing some act in the course of its commission shall be punished by one-half the penalty provided for the commission of the completed offense. These two sections were not repealed, either expressly or by implication, by the terms and import of the act here attacked.

It is claimed that the rule of prima facie evidence sought to be established by section 6 of the act attacked, to the effect that mash, wort, or wash found in any house, building, or inclosure shall be deemed to have been made and fermented by the person in possession of the premises, is an evidential rule beyond the powers of the Legislature to establish; and that the same is true as to the still or parts thereof.

The Legislature has the power, even in criminal cases, to prescribe a rule of evidence to the effect that where certain facts have been proved they shall be prima facie evidence of the main facts in question, provided the fact proved has some fair evidential relation tending to establish the main

issue. It is doubtful whether the Legislature may make a certain state of facts prima facie evidence of the crime charged where the facts proved are merely of an artificial or speculative evidential character. Certainly the Legislature is without power to make prima facie evidence of crime facts or circumstances over which the party charged had no control or with which he had no connection. 20 C. J. "Evidence," §§ 27 and 88; 10 R. C. L. 864; Wigmore on Evidence, vol. 1, § 7.

Condensing what Prof. Wigmore says on this point: A rule of substantive law may be protected by the Constitution, and a statutory rule of evidence that infringes that right may be invalid. The legislative function is separate from the judicial function and a statute which has for its purpose the exercise of judicial power is invalid. The judicial power applies the law to concrete facts and involves an investigation to establish the facts. But no one has a vested right in a rule of evidence. He can only complain when the right to establish or rebut a substantial issue is taken from him. Ordinarily, a rule of prima facie evidence does not deprive one of any substantial right, although it may operate to shift the burden of proof. Wigmore on Evidence, §§ 8 and 1354, par. 3 et seq.

A presumption must be based upon a fact, and not upon an inference or upon another presumption. Lawson on Presumptive Evidence, Rule 118, p. 652; 10 R. C. L. 870, and cases cited. The rule of presumptive evidence attempted to be established by this act is based on a presumption that the person in possession of the premises and its inclosure where the things prohibited may be found had knowledge of their existence and location, and upon that presumption bases another presumption that they belonged to him and that he intended to use them for an illegal purpose. This violates the

rule well established everywhere that one presumption cannot be based upon another.

If it can be said that the presumption stated in section 6 is not based on another presumption and is not void for that reason, there are cases to which such statutory presumption, though valid, should not apply. For instance. in a case recently decided in this court the record showed that a still had been found on a ranch which contained more than 18 sections of land and was more than four miles square. It could hardly be said that there was a presumption of law that the person in possession of the ranch placed it there. All the authorities agree that such a statutory rule of evidence is a dangerous one, and that it should not be applied where it has no intrinsic evidential force or where its application will impair some positive statutory or constitutional right.

The rule of evidence as provided in section 6 of the act might not necessarily impair its enforcement if otherwise valid, but on account of the other reason stated we hold the act is in conflict with the Constitution, and is a subsidiary act in conflict with other prohibition statutes which it did not repeal, and that it is not susceptible of practical enforcement.

The application for a writ of habeas corpus will be sustained and the writ shall issue, ordering the discharge of the petitioner.

DOYLE, J., concurs.

MATSON, P. J., concurs in the result.

MATSON, P. J. (concurring). In Ex parte Cain, 20 Okla. 125, 93 Pac. 974; Id., 1 Okla. Cr. 7, 93 Pac. 974, the Supreme Court held that the constitutional provision prohibiting

the barter, sale, manufacture, giving away, etc., of intoxicating liquors was self-executing and became immediately enforceable in the courts of this state on admission of the state into the Union.

Further in that opinion it was held that the word "imprisonment" as used in such article meant imprisonment in the county jail, and for that reason the offense there defined was a misdemeanor and not a felony.

In that opinion it was held also that the territorial statute prescribing a maximum punishment for misdemeanors (where there was "no different punishment * * * by some existing provision of law") at imprisonment in the county jail not exceeding one year and a fine not exceeding $500 was not in conflict with such article of the Constitution and was applicable to the maximum punishment for a violation of the article; that unless otherwise specifically provided the word "imprisonment" meant imprisonment in the jail.

The Legislature was inhibited to make the fine "less than fifty dollars" and the imprisonment "less than thirty days" —to quote the language of the Constitution.

According to the opinion in Ex parte Cain, supra, the penalty provision of the prohibitory liquor article of the Constitution should read to mean "shall be punished, on conviction thereof, by fine not less than $50.00 and by imprisonment (in the county jail) not less than thirty days for each offense."

The framers of the Constitution employed the language of the Enabling Act in the prescription of the penalty provision. In adopting this language the people fixed a minimum punishment below which the Legislature could not go, but left the maximum punishment to be later provided by

legislative action. But the Enabling Act provided that the provisions of the Enabling Act relative to prohibition "should be immediately enforceable in the courts of said state." In order to make the constitutional article on prohibition immediately enforceable in the courts of the state, that is, to make it self-executing, it was necessary that the word "imprisonment," as used in said article, have a definite and fixed meaning as applied to the amount of minimum punishment therein temporarily fixed. The people therefore provided, as held by the Supreme Court, that the word "imprisonment," unless specified otherwise, meant "imprisonment" in the "county jail." The word "imprisonment" therefore had a fixed meaning in the minds of the people when this article of the Constitution was adopted. The adoption of the article was equivalent to saying that the place of imprisonment for the minimum punishment for this offense is fixed as the "county jail."

The act here in question provides a minimum imprisonment of one year in the penitentiary. The act is directed at various "attempts" or "steps" in the manufacture of intoxicating liquor. The manufacturing of intoxicating liquor is punishable by the self-executing prohibition article of the Constitution and supplemental legislation which leaves the place of minimum imprisonment in the county jail. The place of "imprisonment" for the minimum punishment for manufacturing intoxicating liquor has been fixed by the Constitution to be in the "county jail." It follows, therefore, that the Legislature is powerless to fix the place of "imprisonment" for the minimum punishment for the attempted offense in the penitentiary while the minimum punishment for the complete offense must remain to be in the county jail. If, as held in Ex parte Cain, the word "imprisonment"

meant county jail when the Constitution was adopted, it means county jail now.

As to the place of "imprisonment" provided as the minimum punishment under the terms of the present act, there seems to be, under the former holdings of this and the Supreme Court, a clear conflict with the constitutional prohibition article, and for that reason the act in question cannot be enforced.

In my opinion the amount of minimum fine and the length of the term of minimum imprisonment may be increased but not diminished, but the place of the term of minimum "imprisonment" became a fixture when the Constitution was adopted.