[No. 7429.]

## IN RE HOUSE RESOLUTION No. 10.

1. **Constitutional Amendments—Publication**—Under sec. 2 of art. XIX of the constitution, every proposed amendment to the constitution must be published in each county in one newspaper of general circulation, in such county. Publication in a newspaper devoted to a particular branch of industry is not a compliance with this requirement.

The concluding words of sec. 1 of art. 5 of the constitution, as amended (Laws 1910, c. 3), "until legislation shall be especially provided therefor," refers only to legislation as to the form of petition and for submitting initiative and referendum measures.—(74-77)

2. **Constitutions—Statutes—Construction—Relative Words**—Relative and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.—(76)

### *Original Proceeding.*

The opinion of the court is in response to a resolution and interrogatories of the house of representatives of the eighteenth general assembly:

House Bill No. 243, a copy of which is attached to the resolution, provides that all proposed amendments to the state constitution and the text of any and all measures submitted under the provisions of re-

cently amended section 1 of article V shall be published in full by the secretary of state for the prescribed time in one newspaper, and no more, which newspaper shall be one of general circulation in each county of the state. The bill in question has been passed through the committee of the whole house and is now on the calendar for third reading and final passage. That honorable body, being in doubt about its constitutionality, has submitted for our answer the following:

"Question No. 1. Would H. B. No. 243, above set forth, if regularly enacted, be unconstitutional because of the provisions of section 2 of article 19 of the Colorado Constitution relating to the publication of proposed constitutional amendments?

"Question No. 2. Would said bill, if so enacted, be constitutional as to measures to be submitted under the initiative and referendum because of that part of section 1 of article V of the Constitution, as recently amended, which reads: 'The text of all measures to be submitted shall be published as constitutional amendments are published, and in submitting the same and in all matters pertaining to the form of all petitions, the Secretary of State and all other officers shall be guided by the general laws, and the act submitting this amendment, until legislation shall be especially provided therefor'?"

Mr. HARRY B. TEDROW and Mr. JOHN H. GABRIEL argued for the constitutionality of the proposed legislation.

Mr. CHARLES A. HAINES *contra*.

Hon. BEN GRIFFITH, attorney general, was heard as *amicus curiae*.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court:

This court's reluctance to pass upon grave con-

stitutional questions in response to the demand of either branch of the general assembly, or the governor, has been repeatedly declared, but the majority think that the conditions, hitherto prescribed as sufficient to invoke this extraordinary jurisdiction, now exist which makes it proper to comply with this request.

There are two questions for decision, or rather one question dual in character. It is whether constitutional amendments and texts of measures to be submitted under the so-called initiative and referendum clause of the constitution shall be published in one newspaper only, which has a general circulation in each county of the state, irrespective of the place where it may be published, or in one newspaper of general circulation published in each county of the state.

Section 2 of article XIX provides, among other things, that an amendment to the constitution "shall be published in full in not more than one newspaper of general circulation in each county." The majority of the court think this means that a proposed constitutional amendment must be published in one newspaper in each county in the state, which is published, and has a general circulation, in that county. The phrase "of general circulation" is descriptive of the character of the newspaper. It must be one of general—not special, or limited—circulation; not a mere advertising sheet, or a newspaper restricted or devoted to some particular trade, or calling, or branch of industry. The bill, therefore, if enacted into a law, in so far as it concerns the publishing of constitutional amendments, would contravene section 2 of article XIX.

The next inquiry is whether, as to initiative and referendum measures, the bill may be saved by the concluding words of new section 1 of article V, a copy

of which is set out in question No. 2. The advocates of the bill argue that these words, "until legislation shall be especially provided therefor" relate, and are applicable, to the publishing of constitutional amendments, as well as to their submission and to the form of petitions, and, therefore, that this bill, being pertinent "legislation especially provided therefor," should be construed as in harmony with, and not antagonistic to, section 2 of article XIX.

We cannot agree with this argument. In the process of getting matters before the people for their action there are several consecutive stages. As to constitutional amendments, under section 2 of article XIX, passage through the general assembly is one, the publishing thereof is one, and the submission to qualified electors for their approval or rejection is another, each of which is distinct from the others. As to initiative and referendum measures, under section 1 of article V, the preparation of petitions and securing the required signatures is one step, the publishing is one, and the subsequent submission to the vote of electors is another separate step in the full procedure. Both of these organic sections clearly recognize the distinctions pointed out. It matters not whether the quoted language from section 1 is to be regarded as two sentences, or a compound sentence. The first sentence thereof, or the first part thereof, complete in itself, expressly declares that initiative and referendum "measures to be submitted shall be published as constitutional amendments are published." This is a manifest assumption that publishing and submitting are different steps in the general procedure. To put it beyond doubt, this section, after providing for the publishing, at once proceeds in another sentence, or the second part of the compound sentence, to enjoin upon public officers, in submitting to the people the newly provided for "meas-

ures, and in all matters pertaining to the form of all petitions," to be guided by the general laws, and the act itself which submitted the amendment, "until legislation shall be especially provided therefor."

To what does this qualifying phrase relate? First let us repeat, that the section, without qualifying words, says that the text of the new measures "shall be published as constitutional amendments are published." The constitution itself, as we have seen, already ordains how the latter shall be published, and there was no necessity for any further declaration on that subject. But the constitution leaves to the general assembly to prescribe regulations for submitting amendments to a vote of the people. Accordingly, we find that the general assembly has enacted section 2145, Rev. Stats. of 1908, which furnishes the procedure to be observed by public officers in submitting constitutional amendments and other questions to the vote of the people. Section 1 of article V, having specifically provided that the new measures must be published as constitutional amendments are, then makes it the duty of public officers, in submitting them, to be guided by the "general laws," that is, the "general statutes," under which questions generally are submitted, until the general assembly itself may provide especial legislation for forms of petitions, and for submitting initiative and referendum measures only. Some method for submitting new measures had to be provided. The procedure already prescribed by the "general laws" was chosen. It is only to these statutory provisions that the qualifying, closing words refer. The plain, ordinary meaning of the section leads to this conclusion, and there is no language therein opposing this view.

Bearing in mind the evident intent of the framers of the constitution, which is exhibited in both these sections, to secure, by the same instrumentality, the

widest publicity for all questions on which the people
directly vote, we think that intent should be effectu-
ated. If it be true, as those favoring the bill assert,
that the words "until legislation shall be especially
provided therefor" refer to, and qualify the first part
of the section concerning publication, then, by the
same reasoning, the specific direction embodied in
the second, to observe the general laws in submitting
the new measures and in preparing forms of petitions,
also apply to the publishing of amendments; that is,
the general statutes are to be observed in publishing
amendments thereafter to be submitted. This, how-
ever, would give rise to an absurdity and create an
inconsistency between the two parts of the section,
because there are not, and never have been with us,
any statutes governing the publishing of constitu-
tional amendments. In other words, if the direction
to the public officers to be guided by the "general
laws," applies to publishing, as well as to submitting,
the new measures, the new amendment could not be
enforced, since there are no statutes on the subject of
publishing them.

If the aid of canons of constitutional and statu-
tory construction is needed, we invoke the well-known
rule, which, though not conclusive or of any special
force, is, nevertheless, well established, that relative
and qualifying words and phrases, where no contrary
intention appears, refer solely to the last antecedent
with which they are closely connected. A few cases,
quite in point, may be cited by way of illustration.
In *State ex rel. Attorney General v. Conklin,* 34 Wis.
21, there was before the court for construction a by-
law which provided that "the annual meeting for the
election of officers shall be held on the first Sunday of
July in each year, and the monthly meeting shall be
held on the first Tuesday of each month at half past
seven o'clock p. m." Dixon, C. J., speaking for the

court, said that the words "at half past seven o'clock p. m." defined the hour only of the monthly, and not the annual, meeting.

In *Dearborn et al. v. Inhabitants of Brookline,* 97 Mass. 466, a statute in relation to libraries provided that a town or city "may appropriate money for suitable buildings or rooms, and for the foundation of such library a sum not exceeding one dollar for each of its ratable polls in the year next preceding that in which such appropriation is made." The court said that the words "not exceeding" were intended to restrict only the last antecedent phrase, "for the foundation of such library," and not the appropriation "for suitable buildings or rooms," contained in the first part of the sentence.

In *Quinn v. Lowell Electric Light Corporation,* 140 Mass. 106, an act provided for the adoption of a statute by cities and towns "at a legal meeting of the city council, or the inhabitants of the town called for that purpose." The court held that "called for that purpose" did not apply to the adoption of the statute by the city council, but only to the inhabitants of the town.

Since we have reached the conclusion that the bill violates section 2 of article XIX as to publishing of constitutional amendments, and that the phrase "until legislation shall be especially provided therefor" was intended to, and does, refer merely to the submission of initiative and referendum measures and matters pertaining to the form of petitions, and not to the publication of the measures which are thereafter to be submitted, the first question must be answered in the affirmative and the second in the negative. The effect of which holding is that the bill, if enacted into law, would be invalid because within the inhibition of the provisions of the organic act referred to.

Decision *en banc*. All the judges concurring except Mr. JUSTICE MUSSER, whose views are stated in the following separate opinion.

---

Mr. JUSTICE MUSSER, dissenting:

I do not think that this court should answer the question propounded. The answer to this question will be far-reaching in its results. There has been no proper argument or presentation of the matter to this court. The counsel and the attorney general, who appeared at the argument, stated that they had not had time for a thorough consideration of the question, and professed only to give views hastily gathered and which they themselves said might be changed upon further consideration. This court has had very little light thrown on the question and very little time for its consideration. Its answer has been necessarily made under circumstances of haste, and it seems to me, without sufficient time to warrant an abiding and certain conviction, that the answer made is the correct one. It would be better not to answer at all than to answer under such circumstances.

Whatever views I express have been formed under the same hurried circumstances, as have the views of the majority, and as an answer has been made by the majority that I cannot accept, I deem it my duty to state the reasons why the answer of the majority appears wrong to me. If the pending bill seeks to interpret, or in any manner affect, section 2 of article XIX of the constitution, it is so far inoperative. That section deals with constitutional amendments, proposed by the general assembly only, and not with measures proposed or initiated by the people. It says, that the secretary of state shall cause amendments proposed by the general assembly, "to be published in full in not more than one newspaper of general circulation in each county for four

successive weeks, previous to the next general election for members of the general assembly.'' It is not necessary to determine what these quoted words mean. That portion of the section is self-executing and whatever it does mean, must be followed. It is without the scope of legislative authority to change or interpret by statute the meaning of the quoted part. If the pending bill seeks to provide for the publication of amendments to the constitution, which are proposed by the general assembly, different from the publication required by section 2, it will be so far a nullity if enacted into law. If it provides for the same publication of such amendments as is provided in section 2, then, if enacted into law, it would be useless. In either event, it would be so far inoperative. In so far, however, as the pending bill seeks to affect the publication of measures to be submitted under section 1 of article V of the constitution, as amended by the people at the last election, it seems to me the question is a different one. The authorities cited in the majority opinion, in support of this portion of the answer, are based upon such different facts from the case in hand as, in my mind, to make them inapplicable. Section 1 of article V, as so amended, provides for the initiative and referendum. That section, with reference to the publication and submission of and the form of petitions for measures embraced within it, provides as follows:

''The text of all measures to be submitted shall be published as constitutional amendments are published, and in submitting the same and in all matters pertaining to the form of all petitions the Secretary of State and all other officers shall be guided by the general laws, and the act submitted this amendment, until legislation shall be especially provided therefor.''

The part of section 1 of article V above quoted,

as written, consists of but one independent sentence, a compound sentence composed of co-ordinate sentences. The first co-ordinate sentence relates to the publication of the text of measures to be submitted. The second co-ordinate sentence relates to the submission of these measures, and the form of petitions, and the whole compound sentence is followed by the general phrase, ''until legislation shall be especially provided therefor.'' The subject-matters embraced in the sentence are, first, the publication of the measures, second, the submission of the measures, and third, the form of petitions. At the end of the sentence comes the general phrase ending with the general word ''therefor.'' For what? The answer is obvious. For the subject-matters embraced in the sentence, to wit, the publication of the measures, the submission of the measures and the form of petitions. The word ''therefor'' is general and comprehensive enough to include all the subject-matters of the sentence, and coming as it does, at the end, it must of necessity apply to all. The phrase ''until legislation shall be especially provided therefor,'' as it stands at the end of the sentence, is general and is comprehensive enough to refer to all the subject-matters preceding it in the sentence, the same as though it were written ''until legislation shall be especially provided for the said publication, submission and form of petition.'' For the sake of brevity, the word ''therefor'' was used after the word ''provided.'' I can find no warrant for saying that this general phrase at the end of the sentence shall mean the same as though after the word ''especially,'' it was written ''provided for said submission and form of petition,'' when publication is as much referred to in the preceding part of the sentence as submission or form of petition. If it was intended that the concluding phrase of the sentence was to apply to only a part of the matters

treated of in the sentence, the language of the phrase would have been more limited and not left so comprehensive. There is no warrant for saying that a general phrase in a sentence which can refer to all that precedes it in the sentence does not refer to all, but only a part of that which precedes it. The answer of the majority says, in effect, that that which is comprehensive of the whole does not comprehend the whole, but only a part. The meaning, therefore, of the above quoted sentence from section 1 of article V, to my mind is, that until the legislature shall otherwise provide, the publication and submission of and form of petition for measures embraced in that section shall be as provided in the above quoted sentence. If this is its meaning, then these matters are within the scope of legislative authority and the pending bill conforms to the constitutional provision so far as it relates to the measures covered by section 1 of article V.

The authorities are unanimous in saying that the arrangement and character of the sentences as written and each word therein should be observed and retained in construing constitutional provisions and that any construction is wrong that necessitates a change, even in the mind, in the arrangement and character of the sentences and the elimination of words when a meaning is conveyed without such change or elimination. The meaning of the quoted sentence, as I have construed it, comes without a change in the arrangement or character of the sentences as written and leaves every word to perform its function. It is impossible to look at the sentence as written, keep it that way in the mind and reach the meaning conveyed by the answer of the majority. In order to reach that meaning, the mind must necessarily change the arrangement and character of the sentences and eliminate the word "and" at least, and

it is probable that the word "same" must be changed
to "measures," so that there is a process of mental
change which makes the result when written appear
as follows:

"The text of all measures to be submitted shall
be published as constitutional amendments are pub-
lished. In submitting the same (measures) and in
all matters pertaining to the form of all petitions, the
Secretary of State and all other officers shall be
guided by the general laws and the acts submitting
this amendment, until legislation shall be especially
provided therefor."

Here we have two separate, disconnected, inde-
pendent sentences, where before there was but one
compound sentence, and the word "and" is elimin-
ated because it has no longer any function to perform.
There is no rule or canon of construction that will
warrant such a change as this when a meaning is
obvious without the change.

. There is no record before us to guide or limit
one in the consideration of this question, and recourse
can rightfully be had to such circumstances as are at
hand. It is well known that the initiative and refer-
endum provisions of the Colorado constitution were
in the main borrowed from the state of Oregon, where
the same has been in effect for several years. It is
also known that in Oregon the measures are published
by means of pamphlets, which are mailed by the
proper officers to the voters, and it is claimed that this
method disseminates full information to all voters in
an economical and practical way. It was no doubt
the idea of our legislature in proposing the amend-
ment that some means of publication should be event-
ually adopted that would prove as economical and
practical as possible, and, at the same time, afford
full and sufficient information to the people. The
proposition was a new one in this state and trial was

necessary in order to demonstrate the best way to reach the desired result and the practicality of details. The people wrote the principle in their constitution, and it is inconceivable that they should write in permanently the mere details of the methods by which the principle should be carried into effect, for the details written in the constitution might not prove practical and economical, but costly and cumbersome, in which event it would be highly desirable to change the methods of detail. While these methods of detail can be changed by constitutional amendment, if the people so desire, it is not reasonable to assume that the people reserved only the right to affect a desirable change in details, through the slow, cumbersome and costly method of constitutional amendment, for by doing so they might imperil the effectiveness of the very principle which they sought to carry out. It is more reasonable to believe that the people wrote into their constitution the principle of the initiative and referendum and left it to the legislature, if it saw fit in time, after demonstration by experience, to work out practical, economical and efficient details of publication, submission and forms for petition, and until the legislature should so act they said in their constitution that these details should be handled as provided in the above quoted sentence from section 1 of article V. This to me seems to be the reasonable way of viewing the matter, and thus the meaning that the above quoted sentence conveys to me is consonant with reason, affords the people a flexible and economical way of arriving at practical, efficient and economical details in working out a principle, and thus the effective carrying out of the principle which the people established is not hampered and defeated by the mere question of detail.

For the reasons above stated, I cannot join with the majority in the answer they have given.