KITCHENS *v.* PARAGOULD.

4-4108

Opinion delivered December 2, 1935.

*W. J. Stone, Maurice Cathey* and *Wm. F. Kirsch,* for appellant.

*W. W. Bandy* and *Jeff Bratton,* for appellees.

*Ed I. McKinley, Jr., Joe Morrison, W. S. Atkins, Russell Elrod, C. L. Polk, Jr., G. D. Walker, Leo J. Mundt* and *Edwin Bevens, amici curiae.*

BAKER, J. B. M. Kitchens as a taxpayer filed this suit against the city of Paragould in the chancery court of Greene County. He sought an injunction against the city and its officers to prevent the issuance of bonds, the selling or pledging of the same for the purpose of constructing a light plant and distribution system within the city, without first having procured from the Department of Public Utilities a certificate to the effect that public necessity and convenience required the construction and operation of such plant.

The complaint, the effect of which will be stated below, was met by a demurrer which was sustained, and the complaint was dismissed, plaintiff declining to plead further after demurrer was sustained.

To save time and space, the city of Paragould and its officers, the Department of Utilities, Amendment No. 13 to the Constitution of the State of Arkansas and act No. 324 of the Acts of 1935, will be hereinafter designated respectively as "city" or "Paragould," "Department," "Amendment" and "act No. 324."

Proceeding under the amendment, Paragould, in 1932, by ordinance and election held thereunder, voted to issue bonds of the par value of $100,000 to construct a light plant and distribution system. Before the bonds were issued a suit was filed by Arkansas Utilities Company against the city. That company was already in the field supplying the requirements of the city, and it challenged the right of the city to construct its own plant and system, and to operate same.

Some of the problems in that litigation are akin to those here presented. The Arkansas Utilities Company was operating under an indeterminate permit issued in 1921, under act No. 571 of the Acts of 1919. This inde-

terminate, permit was issued just a few days prior to repeal of said act No. 571. The repeal, however, did not destroy the permit which was alleged. by the utilities company to be perpetual and exclusive. Upon appeal of this case, the issues were decided in favor of Paragould in April, 1934. *Paragould* v. *Arkansas Utilities Co.*, 70 F. (2d) 530.

This bit of legal history and citation is given in explanation of the fact that only one matter appears on this appeal for our consideration. After the decision above cited, Paragould was free for a time to proceed with her enterprise of acquiring and operating a municipally owned light plant.

A careful and extended study of the several briefs filed here by attorneys of the interested parties and by friends of the court convinces us that it is impracticable and perhaps unnecessary to attempt a discussion and detailed analysis of act No. 324. If that course were pursued, this opinion would be unduly prolonged and extended. We shall content ourselves with an announcement of our conclusions omitting practically all of the mentioned details and provisions, of said act.

Before any substantial progress was made after the decision above cited, the General Assembly of 1935 passed act No. 324. Certain provisions of that act became impediments to progress in the development of the city's local lighting system.

It is conceded, or, at least, not disputed, that Paragould was proceeding under the Amendment adopted in 1926. The regularity and sufficiency of these proceedings were not questioned in the former litigation nor here. During all the intervals wherein all these things have occurred, Paragould was a city of the first class, with the right to act under the Amendment.

Said Amendment is self-executing, complete, needs no statute or legislation in aid thereof. It grants the power and right to cities of the first and second classes to construct certain improvements and to issue interest-bearing bonds to pay therefor. It authorized the imposition of a limited tax of 5 mills to repay bonds issued for all these improvements. For water plants and light

plants, however, the tax may be doubled, when necessary, under the conditions therein stated.

The right to invoke or use this grant of power is or may be exercised only by a majority vote of the qualified electors in such cities of the first and second classes.

Without setting forth more specifically the details of the Amendment, let it suffice to state that under this Amendment to the organic law, the scheme and machinery, including power and methods of procedure, are apparently complete in all details. Without the aid of statutory law, but under the amendment, exclusively, municipal plants may be established and put into operation.

But it is urged in this suit that act No. 324 makes it necessary that Paragould obtain from the department a certificate of necessity and convenience before further proceedings may be had. In other terms, license must be procured before any new construction may begin. Section 41, act No. 324.

For the purpose of the consideration of matters here involved, we are going to assume, as appellant probably has, that the department would not issue the certificate.

The effect of this contention must be said to result in a conclusion that the General Assembly has power to make of no effect provisions of the Constitution by endowing some bureau or commission, with discretion to determine the expediency of obedience to that part of organic law. To state such a proposition is a refutation of its soundness.

The result of the election in Paragould on the question of constructing a light plant and distributing system when declared supplied and furnished the only certificate of convenience and necessity that could be required.

However, we do not agree with learned counsel for appellant in all particulars upon their interpretation of act No. 324. Said act No. 324 is not free from ambiguity. Its definitions are not clear; they do not define. ''Public utilities'' mentioned therein, mean and include all privately owned organizations supplying or furnishing water or electricity or other service usually so supplied

by agencies and organizations possessing a monopoly of the commodity; but exclusive of municipally owned utilities engaged in similar enterprises.

This conclusion, we think, is based upon the soundest principles. Experience has taught the necessity of regulation of utilities. These regulatory bodies have taken many forms, all springing from the necessity of regulatory power supported by the State to protect local communities and individuals from unjust and unfair exactions. In some form or other regulatory schemes have permeated the whole country.

In 1933 Arkansas adopted a Fact-finding Tribunal, act No. 72. From it was evolved the Department of Utilities, act No. 324.

Such bodies are the public arbiters for municipalities, for the citizenship, more particularly in matters wherein expense, lack of information, etc., would make individual and even municipal protest and action puerile and futile.

Not so with the municipal utility. It has no office far away or inaccessible. Its business is conducted by those whose interests are common to all who are served. Once its capital investment is repaid, it does not have to earn except to make extensions and improvements, and to meet obsolescence and decay. So long as people are capable of local self-government, they would not find it necessary to appeal to a utility commission for aid in the operation of a municipally owned utility. Such utility is local, its problems are local. We accord to every community the ability, the right and authority to initiate, operate, and manage all local concerns, without interference from outside agencies, wholly disinterested and possessing probably no understanding of the peculiar conditions.

We must and do give the legislative bodies credit for honest effort at proper service, without making vain requirements. We think therefore act No. 324 is a part of a regulatory system to give aid where and when needed, but it does not create or foster a gratuitous concern not far removed from meddling, in matters purely local. Such are the general purposes of act No. 324. We

are not prepared to say any considerable part of it is void under any and all conditions.

It must follow however that act No. 324, in so far as it may stop, hinder, or frustrate the employment, use or execution of the power and rights made available under the amendment, is not enforceable for such purposes. A right granted by the Constitution, when unconditional, cannot be defeated, even in part, by statute. The power to impair would be the power to destroy.

We are not concerned with the supposed beneficent effects of act No. 324. The policy of legislation is a legislative function. We must say, when the issue is properly presented, whether legislation is in conflict with provisions of the Constitution. Ordinarily we look only to the statutes to determine what powers have been delegated to cities and towns. We regard as axiomatic that cities and towns are creatures of the Legislature, subject to its control, and that they can function only within the limits fixed by law. *Eagle* v. *Beard,* 33 Ark. 497.

But it is no less true that all law, whether in relation to municipalities or otherwise, must not be in conflict with the Constitution. All preconceived ideas or notions must yield in recognition of such limitations. We have already expressed the view that the amendment is self-executing. It meets all the requirements of a self-executing instrument as defined in *Cumnock* v. *Little Rock,* 168 Ark. 777, 781, 271 S. W. 466. No enabling act was therefore necessary to the enforcement of Amendment No. 11. *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22.

The same rule obtains in the instant case. *Wright* v. *Ward,* 170 Ark. 464, 280 S. W. 369; *Martin* v. *State ex rel. Saline County,* 171 Ark. 576, 286 S. W. 873.

Since there is no necessity for statutory law in aid of the amendment, act No. 324 is not to be regarded as a part of the machinery or scheme as authorized. This is the more apparent from the seeming conflicts. Since it is conceivable that conditions could arise, differing from those under consideration, wherein some of the provisions of act No. 324, apparently conflicting with the Amendment, might be invoked, we hesitate to declare such

conflicting provisions wholly void. However it is certain Paragould has the right and power to proceed under the Amendment, unhampered by any of the provisions of act No. 324. If the questioned provisions of act No. 324, such as § 47, are not void, they are, at least, not applicable, or enforceable for purposes as contended by appellant. Since the legality or availability of these provisions of act No. 324 as they may be invoked in the government or regulation of rival or competing privately owned public utilities is not before us, we do not determine such questions now. We have attempted the decision of the sole question here presented without the impairment, by any announcement of ours, of any part of act No. 324, wherein it may properly be invoked. This position we have taken is supported by numerous decisions. *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9; *Arkansas Railroad Commission* v. *Castetter,* 180 Ark. 770, 22 S. W. (2d) 993.

The decree of the chancellor was correct in holding that a certificate of convenience and necessity was unnecessary in this action, and could not be required.

Decree is affirmed.