## No. 16,925.

YENTER ET AL. *v.* BAKER, SECRETARY OF STATE ET AL.
(248 P. [2d] 311)

Decided August 27, 1952.   Rehearing denied September 15, 1952.

Mr. ERSKINE R. MYER, Mr. FRED E. NEEF, Mr. RICHARD H. SHAW, for plaintiffs in error.

234

Mr. Duke W. Dunbar, Attorney General, Mr. H. Law-
rence Hinkley, Deputy, Mr. Frank A. Wachob, Assist-
ant, for defendant in error Baker.

Messrs. Henry & Keating, for defendant in error
Railey.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

Section 1, article V, of the Colorado Constitution,
relative to initiative and referendum, provides, inter alia,
that, "the people reserve to themselves the power to pro-
pose laws and amendments to the Constitution and to
enact or reject the same at the polls independent of the
general assembly * * * . The first power hereby res-
served by the people is the initiative, and at least eight
per cent. of the legal voters shall be required to propose
any measure by petition * * * . Initiative petitions * * *
shall be addressed to and filed with the secretary of state
at least four months before the election at which they
are to be voted upon * * * . The secretary of state shall
submit all measures initiated by or referred to the people
for adoption or rejection at the polls, in compliance here-
with. * * * . The text of all measures to be submitted
shall be published as constitutional amendments are pub-
lished, and in submitting the same and in all matters
pertaining to the form of all petitions the secretary of
state and all other officers shall be guided by the general
laws, and the act submitting this amendment, until leg-
islation shall be especially provided therefor."

Subsequent to the adoption of said article V of the
Constitution, the general assembly passed an act, being
chapter 147, S.L. Colo. '41, pertaining to initiative and
referendum petitions in which it is provided in section 1
that after the title of a proposed amendment shall be
fixed, "the secretary of state shall cause to be published

once each week for two successive 'weeks in each county of the state * * * a true copy of the title and the text * * * which publication shall be completed within thirty days from the date the titles and submission clause" shall have been fixed. It further is provided in section 2 of the act that no petition for any initiative law "shall be of any force or effect unless filed with the secretary of state at least eight months before the election at which they are to be voted upon."

Petitions were filed with the secretary of state for initiation of a constitutional amendment to provide for levy of a severance tax, and by the action here sought to be reviewed, plaintiffs, as citizens, taxpayers and owners of oil and gas interests within the state, sought to have the secretary of state enjoined from placing said proposed amendment on the ballot and prayed for judgment of the court declaring the petitions for said amendment invalid on the grounds, first, that said petitions were not filed eight months before the general election, as required by section 2, chapter 147, S.L. Colo. '41; and, second, for the reason that the publication of the title, ballot title, and submission clause was not completed within thirty days from the date on which they were fixed, as required by section 1, chapter 147, S.L. '41.

By answer the secretary of state and the sponsors of the petitions challenged the validity of the legislative requirement that petitions be filed eight months before the election, on the ground that it violated and restricted the right provided in the Constitution to file initiated petitions at least four months before the election, and asserted the sufficiency of the publication of the title, ballot title and submission clause under the requirements of section 1 of the statute. It was stipulated between the parties that affidavits on file in the office of the secretary of state showed publication within the time required by statute except in the county of Saguache where the second publication was on a date six days after the expiration of thirty days from the date on

which the title, ballot title, and submission clause had been fixed. After such answer and stipulation the trial court, on motion for summary judgment, held that both statutory requirements on which plaintiffs relied were invalid as in violation of Article V of the Constitution, and gave judgment denying the injunction and dismissing the complaint.

As to the first ground of asserted insufficiency of the proposed amendment, the Constitution provides that amendment must be filed "at least four months" before the election, while the statute provides that no petition shall be of any force unless filed "at least eight months" before the election. Plaintiffs in error insist that we must interpret the words "at least four months," not as establishing a minimum requirement which would always permit the filing of amendments at any time not less than four months prior to election, but as permitting the legislature to increase the minimum time requirement beyond such four months period; that the action of the legislature increasing the requirement to eight months was procedural in character, and that the statute was enacted to protect the public against fraud and to safeguard the initiative amendment from abuses.

In considering this contention we note: First, it is universally held that such initiated provisions shall be liberally construed in order to effectuate their purpose; to facilitate and not to hamper the exercise by the electors of rights granted thereby. *Brownlow v. Wunsch,* 103 Colo. 120, 83 P. (2d) 775; *Vandeleur v. Jordan,* 12 Calif. (2d) 71, 82 P. (2d) 455; *State ex rel. v. Kozer,* 108 Ore. 550, 217 Pac. 827. A construction as here urged would not be liberal nor effectuate the purpose of the constitutional provision.

Second, the initiative and referendum constitutional amendment provides that it shall be in all respects self-executing. It is not a mere framework, but contains the necessary detailed provisions for carrying into immediate effect the enjoyment of the rights therein estab-

lished without legislative action. We said in *Town of Lyons v. City of Longmont,* 54 Colo. 112, 129 Pac. 198: "A constitutional provision is a higher form of statutory law, which the people may provide shall be self-executing, the object being to put it beyond the power of the legislature to render it nugatory by refusing to pass laws to carry it into effect." An equally important object of self-execution is to put it beyond the power of the legislature to render it nugatory by passing restrictive laws.

█ "Only such legislation is permissible as is in furtherance of the purpose, or as will facilitate the enforcement, of such provision, and legislation which will impair, limit or destroy rights granted by the provision is not permissible." *Baker v. Bosworth,* 122 Colo. 356, 222 P. (2d) 416, quoting 16 C.J.S. 99.

█ "If a constitutional provision is self-executing * * * then any legislation respecting the provision must facilitate enforcement and not curtail or limit any right created and conferred by the provision. If a legislative act undertakes to limit the provisions of the Constitution, then in a contest, the Constitution survives and the act falls." *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W. (2d) 371.

█ "The power to impair would be the power to destroy." *Kitchens v. City of Paragould,* 191 Ark. 940, 88 S.W. (2d) 843.

█ "All such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it." Cooley's Constitutional Limitations, Eighth Edition, p. 171.

█ The legislative requirement that petitions must be filed at least *eight* months prior to election, beyond question narrows and limits the right provided in the Constitution to file them not less than *four* months prior to the election. The fact, as urged, that proponents of other amendments in the past have been able to procure sufficient signers within the shorter period does not sup-

port a conclusion that the right provided by the Constitution is not seriously curtailed, narrowed or limited thereby.

██ Third, the rights reserved by the people included that to enact constitutional amendments "independent of the general assembly." "Independent: not dependent; not subject to control, restriction, modification, or limitation from a given outside source." Black Law Dictionary. To construe the constitutional amendment as contended by plaintiffs in error would make the initiative process in a vital provision *dependent* upon the general assembly. It would necessarily result either in giving the general assembly authority to modify and limit the minimum time for filing petitions to such an extent as virtually to nullify the constitutional provision, or in putting the burden and responsibility on the court to determine whether the legislative limitation was reasonable or unreasonable, and thus ultimately would require that the petitions be filed at such time prior to the election as might be determined by a court. Plainly it was not the intent of the people, in making the self-executing constitutional amendment, to leave the fixing of the time within which petitions must be filed either to the legislature or to the courts. The people reserved to themselves the power of initiative enactment.

██ Fourth, in the constitutional provision the people provided the times and methods of procedure and specifically declared the limit of legislative discretion by saying: "The text of all measures to be submitted shall be published as constitutional amendments are published, and in submitting the same and in all matters pertaining to the form of all petitions the secretary of state and all other officers shall be guided by the general laws, and the act submitting this amendment, until legislation shall be especially provided therefor." As we held *In re House Resolution No. 10,* 50 Colo. 71, 114 Pac. 293, the phrase "until legislation shall be especially provided therefor" was intended to and does refer merely

to the *submission* of initiated and referendum measures and *matters pertaining to the form of petitions.* Therefore it does not apply to the time of filing, or to the necessary number of petitioners. As to these matters, legislation enacted to facilitate the carrying out of the provisions of the Constitution and to prevent fraud may not avoid or restrict the minimum requirements set out in the Constitution.

Plaintiffs' counsel rely on *State ex rel. v. Howell,* 77 Wash. 651, 138 Pac. 286, where there was involved a similar constitutional provision that initiated petitions should be filed "not less than four months before the election." The statute provided that petitions must be filed "within ten months" before the election. We note two important distinctions. Our constitutional amendment reserving to the people the authority to initiate legislation gave back to the legislature authority to provide by statute only matters connected with submitting the amendment and matters pertaining to the form of petitions, while the Washington Constitution provided more broadly that "legislation may be enacted especially to facilitate its operation." More important, while the constitutional amendment in each state provided the same minimum time, our provision being "at least four months before the election," and that of Washington "not less than four months before the election," the statute there challenged made no attempt to change such minimum time but established a maximum time of ten months, and·the court held that, because the Constitution established no maximum time and the electorate changed greatly from year to year, establishment of such a maximum time was a reasonable provision to make for orderly procedure and facilitate the operation of the amendment. We are not here faced with a provision by the legislature to establish a maximum time where the Constitution established only a minimum, but rather with a provision to establish a new minimum other than that fixed by the Constitution.

240

Plaintiffs also rely upon *Miller v. State, ex rel.,* 130 Miss. 564, 94 So. 706, where the constitution provided that public schools should be maintained "at least four months during the scholastic year," and it was held that a longer term was not prohibited. That case is in line with *In re Kindergarten Schools,* 18 Colo. 234, 32 Pac. 422, and *Alexander v. People ex rel.,* 7 Colo. 155, 2 Pac. 894, and other cases referred to in the annotation appearing in 91 A.L.R. 1021. The constitutional section involved in the Alexander case provided that, "the removal of county seats shall be provided for by general law, and no county seat shall be removed unless a majority of the qualified electors of the county * * * vote therefor * * *." The legislature thereafter provided that "not less than two-thirds of all the legal votes cast shall be necessary to effect the removal of the county seat of any county in this state." We held that statute to be valid. There, the legislature was vested with complete power with reference to the removal of county seats, subject only to the limitation of the Constitution that it should not be moved unless a majority of the electors of the county voted therefor; but here the legislature has been divested of all power concerning the initiative except as to submitting the measures initiated and matters pertaining to the form of petitions.

In the annotation at 91 A.L.R. 1021, in which *Alexander v. People, supra,* is cited, the annotator said: "*Under constitutional provisions investing the legislature with discretion* as to the submission of a special proposition to popular vote, it is generally held, * * * that the legislature may require a vote in favor of the proposition in excess of the minimum specified in the Constitution before the law shall become effective." (Emphasis supplied.)

Where the legislature is vested with power, subject to limitation, it has authority to make any restriction not less than that named in such limitation; but where, as here, the legislature is divested of all discre-

tionary authority and the Constitution as part of a self-executing provision sets a limitation, the legislature may not make any other limitation than that provided in the Constitution.

In *Ex Parte Smith*, 24 Okla. Crim. 415, 218 Pac. 708, there was involved a constitutional provision that any person manufacturing or selling any intoxicating liquor should be punished "by a fine not less than fifty dollars and by imprisonment not less than thirty days for such offense." Thereafter Smith was convicted under a statute making it a felony to make or possess mash fit for distillation, and the question arose whether the minimum punishment provided by the Constitution might be modified or increased by the legislature. The court said:

"The fact that a provision in a Constitution is self-executing does not necessarily preclude the Legislature from legislating on the same subject. Such provision may be supplemented by appropriate laws designed to make it more effective, within the bounds reserved by the Constitution and not exceeding the limitations specified. (Citing authority.)

"Usually, if a constitutional provision supplies the rule for its enforcement and fixes a penalty for its violation, it is not only self-executing, but also limits the power of the Legislature to change the penalty. (Citing authority.)" Accordingly, it was held that the statute was in conflict with the constitutional provision, and the legislature without authority to enlarge the minimum set by the Constitution.

In *People ex rel. v. McCormick*, 261 Ill. 413, 103 N.E. 1053, there was involved a constitutional requirement that no person should be elected to any office "who shall not have resided in this State one year next preceding the election," and a subsequent statute requiring that a county commissioner in Cook County "shall have been a resident of said county for five years next preceding the election." Appellee had resided in Illinois more than one year and less than five. The office of county commis-

sioner was a constitutional office, and appellee was held eligible therefor notwithstanding the statute. The court said, "Where the Constitution declares the qualifications for office, it is not within the power of the Legislature to change or add to them, unless the Constitution gives that power."

In *Vanlandingham v. Reorganized School Dist. No. R-IV* (Mo.), 243 S.W. (2d) 107, there was involved a constitutional provision that any tax for school purposes should *not exceed* one dollar on each one hundred dollars of assessed valuation in city and town school districts, *nor exceed* sixty-five cents on a like valuation in other districts. The court held invalid a statute which attempted to restrict the limit of taxation in unincorporated town districts from one dollar to sixty-five cents. It said, "If a constitutional provision is self-executing * * * it necessarily follows that a statute is unconstitutional which is more restrictive than a self-enforcing constitutional provision." See, also, *Bolton v. White Motor Co.*, 239 Ala. 168, 194 So. 510.

While we have carefully considered anew the question here raised, we have interpreted heretofore the words "at least," as used in an analogous situation in the same constitutional amendment, in *Baker v. Bosworth, supra,* and we find no reason for overruling or attempting to distinguish that decision. In the Bosworth case we were concerned with the number requirement, and here with the time requirement for petitioning. Each is a necessary step in the constitutional method of proceeding to initiate amendments. These requirements are equally procedural and equally basic. Decreasing the required time for signatures curtails the right of petition equally with increasing the required number of signatures. Change of either may make impossible the enjoyment of the right reserved by the Constitution, and in any event change of either curtails and narrows that right. Accordingly, after careful deliberation and with full respect for a coordinate branch of the government, we are

compelled to the conclusion that the provision of the statute declaring petitions without effect unless filed with the secretary of state at least eight months before the election restricts petitioners in a right reserved to them by the Constitution and is invalid.

As to the contention of plaintiffs in error that the publication was not completed within the time fixed by the statute, it is affirmatively alleged in the complaint that the necessary funds were deposited with the secretary of state for publication as provided by law, and it is stipulated between the parties that such publication was properly made in each county of the state, with the exception of the county of Saguache wherein the second publication was made six days after the expiration of thirty days from the date when the title had been fixed. We think the timely publication of such an amendment in sixty-two counties of the state, with only five days delay in the sixty-third county—and that without fault of either the proponents of the amendment or of the secretary of state—is a substantial compliance with the requirement of the statute. In *Swanson v. State*, 132 Neb. 82, 271 N.W. 264, the Constitution provided that proposed amendments should be published once each week for four weeks in at least one newspaper in each county, and the record showed that in one county the notice was not made correctly, and that in three others publications were not made the required number of times, yet, it was held to be in substantial compliance with the constitutional requirements. In *Tausig v. Lawrence*, 328 Pa. 408, 197 Atl. 235, the statute required that the secretary of the commonwealth "shall cause" the advertisement of a constitutional amendment to be published, as is provided in the constitutional provision before us, and the court there said: "This does not require the Secretary himself to go into each county and personally publish the advertisement; he causes it to be published when he places it in the hands of the recognized media for publication in time to permit its insertion * * * and with

direction to publish before that time. * * * He cannot by such failure defeat the will of the people * * * . Nor will the submission of a proposed amendment be frustrated by the neglect or refusal of one or more newspapers to publish within the time time specified. To hold otherwise would render the adoption of amendments dependent on the action of newspapers, and if any of these should be opposed to them, it could frustrate their adoption."

Accordingly, the judgment of the trial court is affirmed as to the dismissal of the action; but since we hold, as urged by the Attorney General, that the publication was in compliance with the provisions of the statute, we make no determination as to the validity of the statutory provisions requiring such publication; and the finding of the trial court, as to the invalidity of section 1, chapter 147, S.L. '41, is not here considered or affirmed.

MR. JUSTICE MOORE and MR. JUSTICE CLARK dissent.

MR. JUSTICE MOORE dissenting.

I respectfully dissent from the majority opinion of the court. The questions presented are of great significance, and involve a thorough understanding of basic fundamentals in our system of government. We are not here concerned with the propriety of the act of the legislature in so far as it relates to political policy. The legal conclusions which I reach in this case are diametrically opposed to my own political philosophy. Courts do not determine legal questions by straining the plain meaning of words to correspond with the conception which individual judges may have on political or economic questions.

Defendants in error base their claim upon the opinion of this court in the case of *Baker v. Bosworth*, 122 Colo. 356, 222 P. (2d) 416. I dissented from the views expressed in that opinion, but did not find time to assign reasons for that dissent. Believing that the grave error committed by this Court in that decision should be cor-

rected at the first opportunity, I now state the reasons why that case should be overruled, and this judgment should be reversed.

The majority opinion in this action, and the opinion in *Baker v. Bosworth, supra,* entirely ignores, or deftly sidesteps, basic and fundamental principles of constitutional law. Rules which from time immemorial have governed the construction of constitutional and statutory provisions are illogically held not applicable, or are ignored altogether.

The opinion of this Court in the Bosworth case fails completely to recognize the fundamental proposition that the legislative branch of our state government has full, unrestricted and plenary power to legislate in any field whatever except in relation to those matters in which it is prohibited from acting by the Constitution of the United States or that of the State of Colorado. In thus ignoring this basic principle a grievous misconception of constitutional law is effected. The Act of the legislature under consideration in the Bosworth case, as in the case at bar, should be upheld unless the Constitution of the State of Colorado prohibits the enactment of the statute in question in each case. I quote from *Alexander v. People,* 7 Colo. 155, 160, 2 Pac. 894, as follows: "But the legislature being invested with complete power for all the purposes of civil government, and the state constitution being merely a limitation upon that power, we look into it, not to see if the enactment in question is authorized, but only to see if it is prohibited."

The constitutional provisions which we are called upon to interpret in the case at bar and that which was interpreted in the Bosworth case, very clearly do not prohibit the legislature from acting in the manner complained of. Basic rules of construction, which the majority opinion disregards, and which are ignored in the Bosworth case, are:

First: Words and phrases found in constitutional and statutory provisions are to be construed by giving to

them their. familiar and generally accepted meaning. Forced, subtle, strained or unusual definitions should never be resorted to "where the language used is plain, its meaning clear, and no absurdity is involved." *People ex rel. v. Hinderlider,* 98 Colo. 505, 57 P. (2d) 894; *Jones v. Board of Adjustment,* 119 Colo. 420, 204 P. (2d) 560; *People v. Elliff,* 74 Colo. 81, 219 Pac. 224. Courts have no right to add an important qualification or exception to a constitutional provision and by so doing give rise to a lame excuse for declaring an act of the legislature unconstitutional. *In Re Estate of Bourquin, Weiss v. Salvation Army,* 84 Colo. 275, 269 Pac. 903. That is exactly what the court did in *Baker v. Bosworth, supra,* and that flagrant error is repeated in the majority opinion in this case.

The Bosworth case overruled *Alexander v. People, supra,* without mentioning the latter opinion, notwithstanding that the principle announced by this court in that case was relied upon and argued at length. The Alexander case in principle is diametrically opposed to the majority opinion in this case and to the opinion in *Baker v. Bosworth, supra.*

The constitutional provision which we were called upon to construe in *Baker v. Bosworth, supra,* appears in article V, section 1, of the Colorado Constitution. It provides: " * * * and *at least eight per cent of the legal voters* shall be required to propose any measure by petition * * * ." The constitutional provision which we are called upon to construe in the case at bar is, "Initiative petitions * * * shall be addressed to and filed with the secretary of state *at least four months* before the election at which they are to be voted upon." (Emphasis supplied.) In 1945, the legislature by statute provided with reference to the percentage of signatures that "at least fifteen per cent" of the voters shall be required to initiate a measure. In 1941, the legislature further provided that petitions should be filed with the secretary of state "at least eight months" before the election. The question

in the Bosworth case was whether the legislative act was prohibited by the constitutional provision; and the question in this action is the same.

I respectfully submit that a casual reading of the constitutional provision will clearly indicate that there is no restriction against the exercise of the plenary power of the legislature other than to prohibit the fixing of a percentage of voters which is less than eight per cent of the total. Thus, the lowest limit only was fixed by the fundamental law, and the legislature was left free to act without restraint in the ascending scale. In order to hold the Act of the legislature unconstitutional in the Bosworth case, it was necessary for the court to reach the startling conclusion that when the framers of the constitutional provision used the words "at least eight per cent" what they really meant to say was "not *more* than eight per cent of the legal voters shall be required to propose any measure * * * ." How such a conclusion could ever be reached by an appellate court is more than I can understand. To my knowledge no such construction has ever been given in any other appellate court to the phrase "at least" or to any similar, synonymous phrase. Numerous opinions of courts of last resort have denied the strained construction which the majority opinion upholds. The expression "at least" means "not less than" to 999 men out of every 1,000. Who can be found to say that "not *less* than" in reality means "not *more* than." Thus, in effect this court stands alone in saying that "at least eight per cent" or "not less than eight per cent" really means "not more than eight per cent." Resort to any dictionary will quickly and conclusively establish that "at least eight per cent" and "not less than eight per cent" are synonymous terms, and that their meaning is directly opposite to the phrase "not more than eight per cent."

We are not without legal definition founded on sound reasoning. From numerous cases which might be cited, I quote from *Barron v. Green,* 80 Atl. 586 (N.J.): " 'At

least' is an adverbial phrase meaning at the lowest estimate; at the smallest concession or claim; in the smallest or lowest degree; at the smallest number; and sometimes used in the sense of clearly. It is a phrase of emphasis expressive of a minimum, and implies the possibility of more." To like effect are: *Pitman v. Drabelle,* 183 S.W. 1055; *State v. Howell,* 138 Pac. 286, (Wash.); *Miller v. State ex rel.,* 94 So. 706; *In re Gregg's Estate,* 213 Pa. 260, 62 Atl. 856.

Second: Another basic and fundamental rule of statutory and constitutional construction which *Bosworth v. Baker, supra,* and the majority opinion in this case, either violates or ignores, is the following.

Whenever an act of the legislature is questioned upon constitutional grounds, it is the solemn duty of courts to harmonize the statute with the Constitution if by any reasonable construction of the words used such a result can be obtained. The duty of the court is to search for a reasonable way to uphold the statute. The question is not whether the statute may be voided, "but whether it is possible to uphold it."

*Bosworth v. Baker, supra,* and the majority opinion in this case, grossly violate this rule. In order to declare the 1941 statute invalid in the case at bar, and the 1945 statute invalid in the Bosworth case, in effect, it is absolutely necessary for us to determine by some magic wand of judicial construction that the phrase "at least" means "not more than" which upon its face is manifestly untrue.

Our duty is to harmonize by construction if it can be done. Here we do exactly the opposite. The rule is clear and of long standing, and until *Bosworth v. Baker, supra,* and in this case, has not been assaulted with deadly effect. I quote from but one of a long series of cases which state the court's solemn duty in the situation here under discussion.

"In approaching the question of the validity and constitutionality of the statute, it is well to keep in mind

certain fundamental rules. When an act of the legislature is attacked on the ground of unconstitutionality, the question presented is not whether it may be voided but whether it is possible to uphold it. *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041. Every presumption will be indulged in favor of the legislation and only clear and demonstrable usurpation of power will authorize judicial interference with legislative action. *Green v. Frazier,* 253 U.S. 233, 64 L. ed. 878, 40 Sup. Ct. 499. The rule was well stated by the Supreme Court of Massachusetts in *Wellington et al. Petitioners,* 16 Pick, 87, and quoted with approval by us in *Milheim v. Moffat Tunnel District,* 72 Colo. 268, 273 (211 Pac. 649), as follows: 'When called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.' " *People ex rel. Rogers v. Letford,* 102 Colo. 284, 79 P. (2d) 274.

Those who drafted the Initiative and Referendum amendment to the Constitution demonstrated conclusively that they intended to leave to the legislature a free hand in determining whether or not eight per cent of the voters should be the *maximum* requirement for the initiation of a petition. By the choice of the words employed, they fixed only the minimum percentage of voters that could ever be required. If a maximum had been intended, they would have used language indicating such an intention, as in fact they did in dealing with the percentage of voters required for initiation of a petition in municipalities.

In that connection the very same section of the constitution provides: "The initiative and referendum powers reserved to the people by this section are hereby fur-

ther reserved to the legal voters of every city, town, and municipality. * * * " Art. V, §1, Colo. Constitution.

If the framers of the Constitution intended that "at least eight per cent" of the legal voters should mean the maximum per cent of voters that could at any time be required by law, then no other words were needed to fully reserve to the cities and towns every right reserved by the amendment, insofar as municipal legislation was concerned. ·But the framers of the constitutional provisions well understood the vast difference between the phrase "at least" and the phrase "not more than." They provided that, in addition to the above quoted provision, that: *"Not more* than ten per cent. of the legal voters may be required to order the referendum, *nor more than* fifteen per cent. to propose any measure by the initiative in any city, town or municipality." Art. V., §1, Colo. Constitution. (Emphasis supplied.)

By the opinion of this court in *Baker v. Bosworth, supra,* and by the majority opinion in this case, this significant sentence in the Constitution is held to be without meaning, and mere surplusage! And this result obtains notwithstanding yet *another cardinal rule* of statutory and constitutional construction.

We said in *Leyden Co. v. Buddy,* 98 Colo. 452, 56 P. (2d) 52: "This is enforced by the well recognized rule of statutory construction that, if possible, some meaning and effect must be given to each word used in the statute in question."

In *Bedford v. C. F. & I. Corp.,* 102 Colo. 538, 81 P. (2d) 752, we held that, if possible, the construction which gives effect "to every word it contains" must be favored and that our duty is to construe words and terms employed so as to render them "consistent and harmonious." All of this we failed to do in the Bosworth case. We did just the opposite. We perpetuate the error in the majority opinion in this case.

The majority opinion in this case, and the decision in *Baker v. Bosworth, supra,* lay stress upon the fact that

the constitutional provisions are self-executing, and support for declaring the legislative acts unconstitutional is claimed because of that fact.

I respectfully submit that whether a constitutional provision is self-executing has nothing whatever to do with creating a prohibition against action by the legislature. The prohibition against such action either exists or does not exist, by virtue of the words used in the Constitution. If, as here, and in the Bosworth case, the prohibition is clearly not present in the constitutional provision, the self-executing clause can create no limitation in that area in which the prohibition does not exist. The unrestricted area of legislative authority, namely, the right to determine whether more than eight per cent of the legal voters should be required, remains unrestricted whether the constitutional provision is self-executing or not.

I have read every case cited in *Baker v. Bosworth, supra*. Not one case there relied on justifies declaring the statute unconstitutional. Only one of those cases even remotely touches upon the question. It is the case of *State v. Hall*, 44 N.D. 459, 171 N.W. 213. This case did not involve the question of constitutionality of any statute, and the sole question there actually decided was whether a constitutional amendment was self-executing. Expressions of opinion not necessary to a determination of the question in issue are found in that decision which gives some support to the result obtained in *Baker v. Bosworth, supra*. However, when the history of that controversy is considered, *State v. Hall, supra*, must be appraised as the weakest of all precedents. The opinion in that case reversed, by a bare majority, a previous and unanimous decision of the same court in *State v. Hall*, 35 N.D. 34, 159 N.W. 281, which had held that the initiative amendment in North Dakota was not self-executing because it was indefinite and uncertain. Between the time of the first decision and the second decision, the personnel of the court had changed, an election having

been held. The initiative and referendum was then a hot political issue. It is not surprising, therefore, that in the dissenting opinion of Mr. Justice Bruce, who wrote a concurring opinion in the first case, and dissented in the second decision, the second opinion branded as political in character and unworthy of a dignified status as a precedent, among other things, said: "It is no doubt true, as has been publicly stated by my associate, Mr. Justice Robinson, that he, the said justice, made a pre-election promise to overrule the decision in the case of State v. Hall, supra, and that he would not have been elected if he had not done so, and it may be true, as asserted by Mr. Justice Robinson, that the secretary of state was conversant with this fact. I have yet to learn, however, that the making of any such pre-election promises were ever contemplated by the framers of our government, or that a show of force in the shape of a numerously signed petition should serve as a proper justification for a violation of my oath of office and a reason why I should hold that to be the law which I do not believe to be the law. * * * "

It is indeed unfortunate that the discredited opinion in *Hall v. State, supra,* is cited and relied on by this court as a precedent for the opinion in *Baker v. Bosworth, supra,* when numerous cases from other jurisdictions demonstrate that the pertinent dicta in the Hall case is wholly without support in any other jurisdiction. The opinion in the Bosworth case makes no mention of the cloud under which the Hall case stands, and passes by these unblemished and clear-cut decisions without mention. Included in these "forgotten" cases is our own decision in *Alexander v. People, supra,* in which every argument advanced to establish the unconstitutionality of the statute in the Bosworth case was answered against those who thus contended in a case involving an identical question.

Assuming that *Baker v. Bosworth, supra,* should be permitted to stand alone (with *State v. Hall, supra*) as

authority for the proposition that "at least" means "not more than," it does not necessarily follow that the case at bar cannot be distinguished. Certainly the doctrine of *Baker v. Bosworth, supra,* should not be extended.

As further grounds for reversal of the judgment, I submit that the statute involved in the case at bar which requires the filing of petitions with the secretary of state "at least eight months" before the election instead of "at least four months" as stated in the Constitution, is procedural in character, and places no distinctive burden on the right to initiate, and may reasonably be said to have been passed to protect the public against fraud, and to safeguard and preserve inviolate the initiative amendment from abuses. Upon this ground I believe the case at bar can be distinguished from *Baker v. Bosworth, supra.* Upon that point I concur in the dissenting opinion of Mr. Justice Clark. I think the judgment should be reversed.

Mr. Justice Clark dissenting.

I, too, must respectfully dissent from the majority opinion of the court. I have read with interest and concern the dissent by Mr. Justice Moore and approve all that he has written therein relating to rules of construction here applicable and to the duty of this court to exert every reasonable means to harmonize the various statutes and constitutional provisions involved to the end that effect may be given to all thereof if possible to do so. Every reasonable presumption favors the validity of the statute, and the burden is upon its assailant to prove clearly that it is violative of the constitution. *Consumers' League v. Colorado & Southern Ry. Co.,* 53 Colo. 54, 58, 125 Pac. 577, Ann. Cas. 1914A, 1158; *Chicago B. & Q. Railroad Co. v. School District No. 1,* 63 Colo. 159, 166, 165 Pac. 260; *Rinn v. Bedford,* 102 Colo. 475, 477, 84 P. (2d) 827. Many other Colorado cases so hold. The majority opinion does violence to those rules.

I also agree with Mr. Justice Moore that the instant case is distinguishable from that of *Baker v. Bosworth,* 122 Colo. 356, 222 P. (2d) 416.

On the proposition that the Bosworth case should now be overruled, I am not quite able to bring myself into accord. This possibly may be attributable to the fact that I was the trial judge in the Bosworth case. At the time of trial of that case I was impressed with the conviction, although rather reluctantly attained, that under the language of the constitutional provision permitting legislation by initiation upon presentation of a petition signed by "at least eight per cent of the legal voters," the people thereby acquired a basic constitutional right to legislate in that manner, and that an attempt by the legislature to increase that percentage would be violative of a basic right, fixed by constitutional amendment declared therein to be self-executing. It seemed to me then, as it does now, that the constitutional right reserved was basic. The Constitution said "at least eight per cent," and petitioners obtaining eight per cent had the right to have their proposal placed on the ballot. To change that percentage, as the legislature attempted to do, interfered with this basic right, for it is quite conceivable that the signatures of eight per cent of the voters might be obtained while it would be entirely and completely impossible to secure fifteen per cent, or even nine per cent. Thus could be defeated the very purpose of the initiative right, and render it nugatory.

Can this be said of the 1941 act here involved? The legislative change thereby enacted is not basic or fundamental. It does not destroy the effectiveness of the act. It is procedural only. Ever since its enactment until now, every initiated measure presented has been filed eight months before elections. This is a certain demonstration that it is not preventative of legislation by initiation. It is equally demonstrative of the correctness of the contention that the 1941 act is limited in its purpose to procedure only. Furthermore, it is manifest that the

1941 act was passed to correct abuses that had grown up concerning, not the question of policy or fundamental principle, but the *procedure* of submitting proposed legislation by petition. Section 11 of Article VII of the Constitution requires the legislature to enact proper measures to secure the purity of elections and to guard against abuses. When the legislature undertakes to do its duty under this provision, how can it be said that its effort in the performance of this imposed obligation can be invalid under another section of the same basic law? These provisions must be construed so as to give effect to each, and at the same time, if reasonably possible, to harmonize the legislative act therewith. In this instance that is not difficult, as all fit together like a glove. The provision sought to be changed is not a basic right fixed by the Constitution, but is only a step in procedure; abuses were evident under the original procedure; by the 1921 Act the legislature sought to and did correct these abuses, as was its obligation under another constitutional provision; by so doing it not only did not destroy, but made possible the right of the people to enact better considered laws by initiation. In my humble judgment, the case should be reversed and remanded with direction to dismiss.